**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AIMEN HALIM and PATRICIA LENCKUS, on behalf of themselves and those similarly situated,<br><br>   Plaintiffs,<br><br>     v.<br><br>REYNOLDS CONSUMER PRODUCTS INC. and REYNOLDS CONSUMER PRODUCTS LLC,<br><br>   Defendants. | Case No.:__21-cv-4194_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Aimen Halim and Patricia Lenckus (collectively, "Plaintiffs"), by and through their counsel, bring this Complaint against Defendants Reynolds Consumer Products Inc. and Reynolds Consumer Products LLC (collectively, "Defendants"). The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

**INTRODUCTION**

   1.  This Complaint seeks to remedy Defendants' unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of Hefty brand Recycling Bags (the "Products").

   2.  Plastic waste is an increasingly dire international problem. Nearly 90% of plastic waste is not recycled. Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[1] As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase Products that are either compostable or recyclable to divert such waste from waterways,

---

[1] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/ (last accessed January 20, 2021).

oceans, their communities, landfills, and incinerators.

3.     Seeking to take advantage of consumers' demands for such Products, Defendants market plastic trash bags under the Hefty trademark as "Recycling" bags. They explain on the back of the label that "Hefty Recycling Bags are Perfect For All Your Recycling Needs" and are "Designed to Handle All Types of Recyclables." The website also confirms that the Products are "designed to handle your heaviest recycling jobs" and "these transparent bags make it easy to sort your recyclables and avoid the landfill." Reasonable consumers understand this to mean that the Products are suitable for disposing of recyclable waste and are recyclable. But that is false. In truth, the bags contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable materials, and are not recyclable because they are made from low-density polyethylene plastic ("LDPE" or "No. 4 plastic").

4.     In the United States, municipal recycling facilities ("MRFs") collect recyclable waste, often through curbside pickup. The recyclable waste is sorted and sold to facilities that can process the material into clean flake material that can be sold and used to make new plastic items. However, it is not cost effective to process LDPE plastic domestically. And, over the past few years, due to foreign export restrictions, the foreign market for LDPE plastic has been eliminated. As a result, products made of LDPE plastic end up incinerated, in landfills or in the environment. What is more, most MRFs classify products made of LDPE film, such as plastic bags, as a recycling contaminant because they can clog up recycling equipment and reduce the value of otherwise recyclable plastics. Indeed, "[w]hen bagged items come through the sort line, [MRFs] throw it in the trash."[2] As a result, the Products are not only non-recyclable but they are unsuitable for disposing of recycling.

---

[2] Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited May 6, 2021); *see also What Can I put in the Recycle Bin*, County of Dupage, https://www.dupageco.org/EDP/Waste_Recycling_and_Energy/55584/ (defining plastic bags as a contaminant that can cause "machine damage, diminished quality, or unsafe conditions for recycling workers").

5.     Defendants know that the Products typically end up in landfills or incinerated and are a contaminant unsuitable for recycling. Defendants' representations that the Products are "Recycling" bags are material, false, misleading and likely to deceive members of the public.

6.     This action seeks an injunction precluding the sale of the Products within a reasonable time after entry of judgment, unless the Products' packaging and marketing are modified to remove the "Recycling" bags misrepresentation and to disclose the omitted facts about their true recyclability. Plaintiffs further seek an award of damages and/or restitution to compensate them and those similarly situated for Defendants' acts of unfair competition and false and misleading advertising.

**PARTIES**

7.     Plaintiff Aimen Halim ("Plaintiff Halim") is a citizen of Illinois, and was at all relevant times, a resident of Chicago, IL. On or about January 15th, 2021, Plaintiff Halim purchased a box of Hefty brand Recycling Bags.

8.     Plaintiff Lenckus ("Plaintiff Lenckus") is a citizen of Illinois, and was at all relevant times, a resident of Winfield, IL. On or about April 21st, 2021, Plaintiff Lenckus purchased a box of Hefty brand Recycling Bags.

9.     Defendant Reynolds Consumer Products Inc. is a publicly traded corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Lake Forest, IL. Defendant Reynolds Consumer Products Inc. is the parent company of Reynolds Consumer Products LLC.

10.     Defendant Reynolds Consumer Products LLC is a company organized and existing under the laws of the state of Delaware, having its principal place of business in Lake Forest, IL. Defendant Reynolds Consumer Products LLC is a wholly owned subsidiary of Reynolds Consumer Products Inc. and owns the Hefty trademark.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more Class

Members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

12. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

13. The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of Illinois. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of Illinois. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of Illinois.

14. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of Illinois, including within this District.

15. Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

### (1) Defendants' False Representations Regarding the Products Suitability for Recycling and Recyclability.

16. Defendants manufacture, market, and sell Hefty Recycling Bags in 13 and 30 gallon sizes. Defendants also offer multiple color SKUs, including translucent blue or clear. The Products are made of low-density polyethylene or No. 4 plastic.

17. Defendants place the prominent representation "RECYCLING" on the front label of the Products with a green background and white font. Next to the representation, Defendants include images of the Products filled with recyclable waste:



18.     The back of the package includes language such as "HEFTY RECYCLING

BAGS ARE PERFECT FOR ALL YOUR RECYCLING NEEDS":



19.     A zoomed in shot of the back label shows that Defendants also include the

representations "DESIGNED TO HANDLE ALL TYPES OF RECYCLABLES" and

"TRANSPARENT FOR QUICK SORTING AND CURBSIDE IDENTIFICATION":

 

20.     Defendants' website provides additional misrepresentations about the suitability

of the Products for recycling stating that they "[r]educe your environmental impact" and are

"designed to handle your heaviest recycling jobs." Defendants' add, "[t]hese transparent bags

make it easy to sort your recyclables and avoid the landfill":

# HEFTY® RECYCLING BAGS

Reduce your environmental impact with Hefty® Recycling bags designed to handle your heaviest recycling jobs. Available in 13 and 30 gallon sizes and ideal for daily use or seasonal cleaning, these transparent bags make it easy to sort your recyclables and avoid the landfill.

- Arm & Hammer™ patented odor neutralizer*
- Transparent clear or blue option for easy sorting
- Designed to handle all types of recyclables

**BUY NOW**

| Sizes Available | Colors Available |
|---|---|
| • 13 gal<br>• 30 gal | • Clear transparent<br>• Blue transparent |

https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

6

21.     Defendants sell the Products on Amazon.com and on its website with images

showing how to use the Product:



https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

22.     Defendants also sell the Products along with video advertisement showing that the

bags are appropriate for putting in the recycling bin with other recyclable waste:



https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

### (2) LDPE Bags Are Not Recyclable and Instead Are a Harmful Contaminant

23.     Recycling is "a method, technique or process designed to remove any contaminant from waste so as to render the waste reusable, or any process by which materials that would otherwise be disposed of or discarded are collected, separated or processed and returned to the economic mainstream in the form of raw materials or products." 415 Ill. Comp. Stat. 15/3. Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item.

24.     In the United States, after plastics are discarded into a recycling bin, they are sent to a MRF where the plastics are sorted by resin type. Plastics numbered #3-7 are batched together to form plastic mixed bales which require further processing. But "the economics [of processing those bales] have proven insurmountable" and there is minimal demand, value, and processing capacity for mixed plastic bales in the United States.[3] Prior to 2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China. However, on January 1, 2018, China enacted the National Sword policy which limits plastic waste imports. Thus, mixed plastic #3-7 bales which were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'"[4] As a result, the majority of LDPE or No. 4 plastic sent to recycling facilities is incinerated, which releases large amounts of greenhouse gas and toxic air pollution into the environment.

25.     Not only are LDPE plastics unrecyclable, in many cases they contaminate the waste stream and decrease the recyclability of otherwise recyclable items. Contaminants are any plastic materials that MRFs do not accept or decrease the recyclability of other items. The

---

[3] *Circular Claims Fall Flat,* Greenpeace, at 10, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last visited Apr. 27, 2021).

[4] *Id* at 11.

Products sold by Defendants are especially problematic because they are made of LDPE film. Plastic films risk clogging and breaking down machinery used to sort plastic waste. As a result, many MRFs do not accept plastic bags at all.

26.     A high presence of contaminants, including unrecyclable films such as LDPE, in the recycling stream, makes otherwise recyclable plastic materials unrecyclable because purchasers of recyclable materials value bales of plastic by the percentage of unrecyclable contaminant they contain. If contamination exceeds a certain level, the bale must be incinerated or sent to a landfill. Therefore, not only is LDPE not recyclable, it may also prevent recycling of otherwise recyclable materials.

27.     Accordingly, Defendants' use of LDPE plastic means their Products are not recyclable and the labels claims regarding recyclability are therefore false.

28.     Defendants further represent and mislead consumers into believing that the Products are useful and beneficial for recycling purposes, including as containers for recyclable materials during collection, transport and sorting. But the use of the Products as containers for recyclables is both unnecessary and counterproductive.

29.     As a general rule, recyclables should be clean and dry and should be placed directly in a collection bin *without the use of a plastic bag or liner*. Accordingly, the Products are not beneficial to either the collection or transport processes, which are designed to work without such bags. Even worse, the Products add work, expense, and waste to the sorting and recycling processes at recycling facilities, as they must be separated from recyclable materials and then disposed of. Most MRFs do not bother with this process due to the hazard of opening plastic bags that may contain "broken glass, syringes" and simply throw bagged recyclables directly into trash.[5] Use of the Products thereby decreases the efficiency of and increases the cost of recycling

---

[5] *See*, *e.g.*, Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited May 6, 2021); *see also What Can I put in the Recycle Bin,* County of Dupage, https://www.dupageco.org/EDP/Waste_Recycling_and_Energy/55584/ (defining plastic bags as

programs, and ultimately adds to the problems of plastic accumulation and plastic contamination in the environment (problems that recycling programs are intended to ameliorate). In sum, the Products are not suitable for recycling and are actually harmful, not beneficial to the overall recycling process.

30.     At a minimum, Defendants' marketing of the Products as suitable and beneficial for recycling purposes undermines both state and local policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment. The manufacture and use of unnecessary LDPE plastic bags—which cannot be recycled and that complicate and contaminate the collection and recycling of truly recyclable materials—undermines the public policies that recycling programs, and consumers who recycle, seek to achieve.

### (3) Defendants' Marketing of the Products Violates the Federal Trade Commission Green Guides

31.     The state of Illinois prohibits "[u]nfair methods of competition and unfair or deceptive trade practices." 815 Ill. Comp. Stat 505/2. In construing what constitutes an unfair and deceptive trade practice, "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act [the "FTCA"]." *Id.* The FTC has provided clear guidance on what constitutes a misleading environmental claim under Section 5(a) of the FTCA through its issuance of 16 C.F.R. Part 260 (aka the "Green Guides"). The Green Guides "set forth the Federal Trade Commission's current views about environmental claims" and "help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. 45." 16 C.F.R., § 260.1(a).  Defendants have violated and continued to violate the Green Guides through the sale and marketing of the Products.

32.     First, Defendants' marketing of the Products as "Recycling" bags violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products

a contaminant that can cause "machine damage, diminished quality, or unsafe conditions for recycling workers").

can actually be converted into reusable material. Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or *by implication*, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." (Emphasis added.) Defendants' use of the words "Recycling" bags with images of the bags placed in recycling bins implies that the Products are recyclable because reasonable consumers understand that only recyclable materials should be placed in a recycling bin. The Green Guides further explain that "[m]arketers should *clearly and prominently* qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b) (emphasis added). And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1, 1998). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.* at 24243.

33. Defendants' marketing of the Products as "Recycling" bags violates these provisions of the Green Guides because Defendants falsely imply that their product is suitable for recycling and is recyclable even though the Products cannot be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some curbside programs, LDPE waste is ultimately incinerated or sent to landfills.

34. Although Defendants state "DEVELOPED FOR USE IN MUNICIPAL RECYCLING PROGRAMS WHERE APPLICABLE" on the back of the box in a small and inconspicuous font, the statement fails to qualify the fact that the Products are made from LDPE and that LDPE bags are not recyclable nor are they suitable for recycling. In the absence of clarifying language, reasonable consumers understand this to mean that the Product is designed

for recycling wherever municipal recycling is available, which is false. Therefore, the

representation is neither a clear nor prominent disclaimer as required by the Green Guides.

35. This starkly contrasts with Defendants' competitors who provide a prominent

front-of-the-label disclaimer that their products can only be used in "MUNICIPAL BLUE BAG

PROGRAMS WHERE APPLICABLE," not anywhere that municipal recycling programs are

available:



36. Defendants' competitors disclose that their products are specifically designed for

"Blue Bag" programs. Although these programs were once numerous throughout the country, the

expense and inefficacy of these programs have caused them to be all but abandoned. For

example, in Illinois and California, 99.9% of communities have eliminated their "Blue Bag"

programs. In the small number of remote communities where "Blue Bag" programs still remain,

the programs typically provide bags directly to consumers for free. Defendants know this fact,

are aware that their competitors have correctly and prominently disclosed that their bags are only

usable for "Blue Bag Programs Where Applicable," but continue to mislead consumers into

believing that they can and should use the Products for ordinary curbside recycling.

37. Further, the Green Guides require marketers to support their environmental claim

with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure

12

that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendants do not possess information sufficient to support their claims that the Products are "Recycling" bags.

### (4) Defendants Misleadingly Market the Products to Increase Profits and Gain a Competitive Edge.

38.     Defendants market the Products as "Recycling" bags to capitalize on consumer demand for "green" products. In particular, Defendants intend for reasonable consumers to believe, and reasonable consumers do believe, that the Products are suitable for disposing of plastic waste and do not contaminate the recycling waste stream. Further, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags, they are recyclable. Finally, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags, they are specially designed to be environmentally superior to competitors' products that do not contain the same representation.

39.     Defendants' illegal marketing campaign has been extremely successful. Defendants are among the largest sellers of trash bags in the nation. The Products are sold in grocery stores, drug stores, and big box stores throughout Illinois and the country. Because of the millions of dollars at stake, Defendants have no incentive to stop claiming that the Products are "Recycling" bags or change their disclaimers to discourage sales.

40.     Because consumers are led to believe the Products are "Recycling" bags and, therefore, purchase them because they are a "green" product, Defendants are able to charge a premium for the Products. If consumers knew that the Products were not suitable for recycling, contaminated the recyclable waste stream, and were not recyclable, the Product would not

command a premium price based on that representation, fewer consumers would purchase them, and Defendants would not pay the premium attributable to that representation.

### (5) Plaintiffs' Experience

41.     On or around January 15th, 2021 Plaintiff Halim purchased a box of Hefty brand Recycling Bags for approximately $8.99 from the Target store located at 4631 W. Foster Ave., Chicago, IL 60630. He read the claim "Recycling" bags on the Products and purchased them because he believed that the bags were suitable for disposing of his recyclables and that the bags themselves were recyclable. Plaintiff Halim used the Products to line the bin of his recyclable waste can in his home and to bag his recyclables. He disposed of the filled bags in his condo association's communal recycling bin for curbside pickup. Shortly after purchasing and using the Products, he learned that the Products were not recyclable and not suitable for disposing of recyclable waste and he immediately stopped using them. Had Plaintiff known that the Products were not suitable for recycling and not recyclable, he would not have purchased them, or at a minimum, he would not have paid a premium for them.

42.     On or around April 21st, 2021 Plaintiff Lenckus purchased a box of Hefty brand Recycling Bags for approximately $8.99 from the Walmart store located at 150 Smith Road in Charles, IL 60174. She read the claim "Recycling" bags on the Products and purchased them because she believed that the bags were suitable for disposing of her recyclables and that the bags themselves were recyclable. Plaintiff Lenckus used the Products to bag her recyclables. She disposed of the filled bags in her sister's recycling bins for curbside pickup. Shortly after purchasing and using the Products, she learned that the Products were not recyclable and not suitable for disposing of recyclable waste and she immediately stopped using them. Had Plaintiff known that the Products were not suitable for recycling and not recyclable, she would not have purchased them, or at a minimum, she would not have paid a premium for them.

43.     Plaintiffs continue to desire to purchase trash bags from Defendants that are suitable for recycling plastic waste and are recyclable. However, Plaintiffs are unable to determine if the Products are made from recyclable materials. Plaintiffs understand that the

design and composition of the Products may change over time. But as long as Defendants may use the phrase "Recycling" bags to describe products that are unsuitable for recycling and are not recyclable, then when presented with Defendants' packaging, Plaintiffs continue to have no way of determining whether the representation "Recycling" on the bags is in fact true. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping and they will be unable to make informed decisions about whether to purchase Defendants' Products and will be unable to evaluate the different prices between Defendants' Products and competitors' Products. Plaintiffs are further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their trash bags marketed as "Recycling" bags are suitable for disposing of recyclable waste and are recyclable.

## CLASS ALLEGATIONS

44.     In addition to their individual claims, Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

45.     Plaintiffs bring this class action lawsuit on behalf of a proposed Class and Subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

### 49-State Class

All persons who, between August 5, 2016 and the present, purchased Hefty brand Recycling Bags throughout the United States in all states other than California.

Excluded from this Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Hefty brand Recycling Bags for the purpose of resale.

### Illinois Subclass

All persons who, between August 5, 2016 and the present, purchased Hefty brand Recycling Bags in Illinois.

Excluded from this Subclass are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Hefty brand Recycling Bags for the purpose of resale.

46.     This action has been brought and may properly be maintained as a class action

15

against Defendants because there is a well-defined community of interest in the litigation and the proposed Class and Subclass are easily ascertainable.

47.     Numerosity: Plaintiffs do not know the exact size of the Class and Subclass, but they estimate that they are each composed of more than 5,000 persons. The persons in the Class and Subclass are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

48.     Common Questions Predominate: This action involves common questions of law and fact to the potential Class and Subclass because each Class and Subclass Member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclass to recover. The questions of law and fact common to the Class and Subclass include, but are not limited to, the following:

a)     Whether the Products are "Recycling" bags suitable for disposing of recyclable waste;

b)     Whether the Products are recyclable;

c)     Whether Defendants unfairly, unlawfully and/or deceptively failed to inform Class and Subclass Members that the Products are made from materials (i.e., LDPE aka No. 4 plastic) that are not recyclable;

d)     Whether Defendants' advertising and marketing regarding the Products sold to Class and Subclass Members was likely to deceive Class and Subclass Members or was unfair;

e)     Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

f)     The amount of the premium lost by Class and Subclass Members as a result of such wrongdoing;

g)      Whether Class and Subclass Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)      Whether Class and Subclass Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

49.     Typicality: Plaintiffs' claims are typical of the claims of other members of the Class and Subclass because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Plaintiffs and Class and Subclass Members purchased one or more boxes of Products. In addition, Defendants' conduct that gave rise to the claims of Plaintiffs and Class and Subclass Members (i.e., marketing, sales and advertising of the Products as suitable for disposing of recyclable waste and/or recyclable) is the same for Plaintiffs and all members of the Class and the Subclass. Plaintiffs' claims, like the claims of the Class and the Subclass, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

50.     Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class and Subclass Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of Class and Subclass Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class and Subclass. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all Class and Subclass Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and Subclass Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class and Subclass Members.

51.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class and Subclass Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class and the Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class and Subclass to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

52.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT 1

### Violation of the Illinois Consumer Fraud Act

### (on behalf of Plaintiffs, the Class, and the Subclass)

53.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

54.     Defendants do business in Illinois, sell and distribute the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States. Specifically, Defendants misled Plaintiffs to believe that the Products were "Recycling" bags when the Products are neither suitable for disposing of recyclable waste nor recyclable. Further, Defendants concealed from Plaintiffs, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are unrecyclable.

55.     In Illinois, the Consumer Fraud and Deceptive Business Act, 815 Ill. Comp. Stat.

18

502/1, *et seq.* ("the ICFA") prohibits deceptive acts and practices in the sale of consumer items.

56.     The Products purchased by Plaintiffs, the Class, and the Subclass were "consumer item[s]" as that term is defined under the ICFA.

57.     Defendants' deceptive misrepresentations, concealments, and omissions were material to consumers because recycling was the primary advertised use for the Products.

58.     Defendants misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendants as set forth above concerning the Product, which has caused damage and injury to Plaintiffs, the Class, and the Subclass.

59.     Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

60.     Defendants intended Plaintiffs and all Class and Subclass Members to rely on its deceptive acts.

61.     Defendants' deceptive acts proximately caused actual injury and damage to Plaintiffs, the Class, and the Subclass.

62.     The conduct of Defendants constituted consumer fraud under the Illinois Consumer Fraud Act.

## COUNT 2

### Fraud, Deceit, and or Misrepresentation

### (on behalf of Plaintiffs, the Class, and the Subclass)

63.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

64.     Defendants fraudulently and deceptively led Plaintiffs to believe that the Products were "Recycling" bags. However, that is false because the bags are unsuitable for disposing of recyclable waste and are not recyclable. Further, Defendants fraudulently concealed from Plaintiffs, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are unrecyclable.

65.     These misrepresentations and omissions were material at the time they were

19

made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs, the Class, and the Subclass as to whether to purchase the Products.

66.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs, and those similarly situated, to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs, the Class, and the Subclass to, without limitation, pay a premium to purchase the Products.

67.     Plaintiffs and those similarly situated believed Defendants' statements and justifiably relied to their detriment on Defendants' fraudulent misrepresentations and omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

68.     Further, Defendants had a duty to inform Class and Subclass Members at the time of their purchases that the Products were not suitable for disposing of recyclable waste because they contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable. Defendants omitted to provide this information to Class and Subclass Members with the intent to induce them to purchase the Products. Class and Subclass Members justifiably relied to their detriment on the facts as they were presented to them. These omissions were material to the decisions of the Class and Subclass Members to purchase the Products. In making these omissions, Defendants breached their duty to Class and Subclass Members. Defendants also gained financially from, and as a result of, their breach.

69.     As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs, and those similarly situated, have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

70.     Defendants' conduct as described herein was willful and malicious and was

designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**COUNT 3**

**Negligent Misrepresentation**

**(on behalf of Plaintiffs, the Class, and the Subclass)**

71.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

72.     Defendants provided false and misleading information regarding the Products, representing that the Products are "Recycling" bags when they are not suitable for recycling waste and are not recyclable. Defendants also deceptively failed to inform Plaintiffs, and those similarly situated, that the Products contaminate the recycling waste stream and decrease the recyclability of their otherwise recyclable items, and are not recyclable.

73.     These representations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products.

74.     Defendants made identical misrepresentations and omissions to members of the Class and Subclass regarding the Products.

75.     Defendants should have known their representations to be false and had no reasonable grounds for believing them to be true when they were made.

76.     By and through such negligent misrepresentations, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants negligently induced Plaintiffs, the Class, and the Subclass, without limitation, to purchase the Products.

77.     Plaintiffs, the Class, and the Subclass relied to their detriment on Defendants' negligent misrepresentations. Had Plaintiffs, the Class, and the Subclass been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

78.     Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## COUNT 4

### Unjust Enrichment

### (on behalf of Plaintiffs, the Class, and the Subclass)

79.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

80.     Plaintiffs, the Class, and the Subclass conferred benefits on Defendants by purchasing the Product.

81.     Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs and other purchasers of the Product. Retention of those monies under these circumstances violates the fundamental principles of justice, equity, and good conscience because Defendants' labeling of the Product was false, misleading, and omitted material information, which caused injuries to Plaintiffs and the other members of the Class and Subclass because they would not have purchased the Product if the true facts would have been known.

82.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and those similarly situated is unjust and inequitable, Defendants must pay restitution to Plaintiffs, the Class, and the Subclass as ordered by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendants as follows:

A.      Certification of the proposed 49-State Class and the Illinois Subclass, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      An award of compensatory damages in an amount to be determined at trial;

D.      An award of statutory damages in an amount to be determined at trial;

E.      An award of punitive damages in an amount to be determined at trial;

F.      An award of treble damages;

G.      An award of restitution in an amount to be determined at trial;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.      For reasonable attorney's fees and the costs of suit incurred; and

J.      For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: August 6, 2021          Respectfully submitted,


    /s/ Peter S. Lubin

Peter S. Lubin
Patrick Austermuehle
LUBIN AUSTERMUEHLE, PC
360 West Butterfield Rd, Suite 325
Elmhurst, IL 60126
(630) 333-0333
peter@l-a.law
patrick@l-a.law

**GUTRIDE SAFIER LLP**
Seth A. Safier, Esq. (*pro hac vice* motion pending)
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiffs